UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEPHANIE WEBER,

      Plaintiff,

  v.                                                                Case No. 04-C-0444

NERCON ENGINEERING & MFG., INC. and
ROLCO INTERNATIONAL, INC.,

      Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Stephanie Weber brought an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), alleging that Defendant Nercon Engineering & Manufacturing, Inc.,[1] her former employer, terminated her employment and denied her short-term disability benefits on the basis of her pregnancy and the birth of her third child, then failed to re-hire her when she was ready to return to work. Both parties have moved for summary judgment. For the following reasons, both motions will be denied.

**BACKGROUND**

On November 27, 2001, Stephanie Weber interviewed for a position as a secretary with Nercon. Nercon office manager Kathy Van Wychen offered her the job on the spot. A day or two

---

[1] Defendant Rolco International, Inc., is a subsidiary of Nercon. This opinion will refer to the defendants collectively as "Nercon."

later, Weber called Van Wychen and accepted the offer. Immediately thereafter, she informed Van Wychen that she was three months pregnant and would need time off. Van Wychen said that she was "fine with that," and she and Weber concluded their conversation without discussing Nercon's policy on pregnancy leave. (Weber Dep. at 19-20.)

Weber began working at Nercon on December 3, 2001. She enrolled in the company's short-term disability plan and paid her share of the premiums. (PFOF ¶ 49.) Under the terms of the short-term disability plan, full-time employees such as Weber are eligible for $150 per week of coverage for up to 26 weeks of absence due to a non-work related illness or injury after 61 days in the plan. (PFOF ¶ 51.) Benefits for illness are subject to a seven-day waiting period. (PFOF ¶ 55.) Pregnancy is considered an illness under the plan. (PFOF ¶ 54.)

In January 2002, Weber spoke to Van Wychen about taking time off for her pregnancy and about receiving short-term disability benefits for that time. (PFOF ¶¶ 59, 61.) Van Wychen told Weber that she would receive some time off, but she didn't know how much; she also indicated that Weber would receive short-term disability benefits for her time off. (PFOF ¶¶ 64-66.) A day later, however, Van Wychen and Steve Anklam, Nercon's human resources manager, told Weber that she wasn't eligible for family and medical leave under state or federal law and that Jim Nerenhausen, the president of Nercon, wouldn't allow her any time off.[2] (PFOF ¶¶ 67-69, 71-72.) Anklam also told Weber that if she took leave not authorized by the company, she wouldn't be eligible for short-term disability benefits. (PFOF ¶ 79.) On February 7, 2002, Anklam followed up with a letter that gave the following explanation of Nercon's position:

---

[2]Federal and Wisconsin law require an employee to be employed by an employer for at least twelve months before he or she is eligible for family or medical leave. *See* 29 U.S.C. § 2611(2)(A), and Wis. Stat. § 103.10(2)(c).

2

> To start collecting on the Short-Term Disability, you need to be a "*Regular, full-time employee.*" At the point you decide to take unapproved leave, your employment will be voluntarily terminated. Once you terminate your employment with the company, you are no longer eligible to collect benefits, including short-term disability.
>
> In summary, the company will not approve any leave and you will not be entitled to collect short-term disability benefits if you choose to terminate your employment by talking [sic] leave not approved by the company.

(PFOF ¶ 117.)

On April 25, 2002, Weber provided Van Wychen with a note from her doctor requesting leave and short-term disability benefits from May 6, 2002, until six weeks after her baby was born. (PFOF ¶¶ 118, 121.) Van Wychen forwarded the note to Anklam, who discussed it with Nerenhausen. (PFOF ¶¶ 122-123.) Weber last worked at Nercon on Friday, May 3, 2002. On Monday, May 6, 2002, she sent the following letter to Anklam:

> As of today, May 6, 2002, I am off on medical leave and will be off until my doctor releases me back to work. I am requesting to use my short-term disability benefit for this duration and plan on returning to work when cleared by my doctor, approximately on or about July 8, 2002.
>
> In the letter you sent me on February 7, 2002, you state that in order to collect the short-term disability benefit, I need to be a regular, full-time employee, and that this would be an unapproved leave, therefore I would forfeit this disability benefit. I feel that I am being denied this benefit on the basis that I am female and pregnant. I believe that I am eligible for this benefit based on the Wisconsin Fair Employment Law and the Short-Term Disability Plan policy offered by Rolco International.
>
> Please advise me of Rolco International's position on my use of this benefit and my status of employment.

(Anklam Ex. 7.) On May 10, 2002, Anklam wrote Weber to inform her that her employment had terminated and that she would not receive short-term disability benefits:

> The company's position is that you are not eligible for short-term disability insurance. To collect Short-Term Disability, you need to be a "regular, full-time employee". At the point you decided to take unapproved leave, your employment

3

> was voluntarily terminated. Once you terminated your employment with the company, you are no longer eligible to collect benefits, including short-term disability.
>
> This is consistent with our past practices of not offering benefits to former employees that are not covered under The Consolidated Omnibus Reconciliation Act [sic] (COBRA).

(*Id.*)

After two temporary employees hired to fill Weber's position proved unsatisfactory, Nercon hired a replacement for Weber, S.W., on a temp-for-hire basis. On June 14, 2002, Weber asked to be re-hired in her old position as of July 8, 2002. On June 17, 2002, Nercon notified Weber that it would not re-hire her because it had filled her position. (PFOF ¶ 306.) On September 16, 2002, Nercon hired S.W. as a full-time employee to fill Weber's old position. (PFOF ¶ 299.)

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment

4

motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The parties in this case have filed cross-motions for summary judgment and have stipulated to many of the same proposed findings of fact. Nevertheless, when both parties have moved for summary judgment, both are required to show that no genuine issues of material fact exist, taking the facts in the light most favorable to the party opposing each motion. If genuine issues of material fact exist, neither party is entitled to summary judgment. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983). The fact that both parties have moved for summary judgment, and thus both parties simultaneously contend that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. *Case & Co. v. Bd. of Trade of City of* Chicago, 523 F.2d 355 (7th Cir. 1975). In other words, cross motions for summary judgment do not constitute a waiver of a trial. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). Rather, the court must assess the merits of each summary judgment motion independently. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461

5

(7th Cir. 1997). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion.

A defendant moving for summary judgment may satisfy its initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support any essential element of the cause of action alleged. *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 323-24. A plaintiff moving for summary judgment bears a much greater initial burden; she must show that the evidence supporting her claims is so compelling that no reasonable jury could return a verdict for the defendant. *Anderson*, 477 U.S. at 248; *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F. Supp. 1130, 1149 (E.D. Wis. 1995).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms and conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act clarifies that

> the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . .

42 U.S.C. § 2000e(k).

6

Case 1:04-cv-00444-WCG    Filed 12/29/05    Page 6 of 13    Document 52

As a Title VII plaintiff, Weber may meet her *Celotex* burden on summary judgment by two different methods. The first, or "direct" method, is by producing direct or circumstantial evidence that Nercon terminated her and denied her short-term disability benefits because of her pregnancy, and that it treated non-pregnant employees similar in their inability to work differently. Evidence that suffices to show that Nercon terminated Weber because of her pregnancy includes both "direct evidence, e.g., an acknowledgment on the part of the employer of discriminatory intent, [and] circumstantial evidence, e.g., ambiguous statements or suspicious timing." *Kennedy v. Schoenberg, Fisher & Newman*, 140 F.3d 716, 722-723 (7th Cir. 1998) (quoting *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996)). Mere evidence that Nercon considered the fact that she would be absent as a result of her pregnancy in making its decisions is insufficient; Weber must also produce evidence that Nercon treated non-pregnant employees similar in their inability to work better than it treated her. *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 583 (7th Cir. 2000); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738-719 (7th Cir. 1994).

Alternatively, Weber can prove her case indirectly via the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To do this, she must make out a prima facie case by showing that (1) she was pregnant, (2) she was meeting Nercon's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) Nercon treated non-pregnant employees similar in their inability to work differently. *Venturelli v. ARC Community Services, Inc.*, 350 F.3d 592, 602 (7th Cir. 2003). Once Weber makes out a prima facie case, the burden shifts to Nercon to present a legitimate reason for the adverse employment action. *Id.* "If [Nercon] presents no evidence in response [to Weber's prima facie showing, Weber] is entitled to summary judgment. If [Nercon] presents unrebutted evidence of a

noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise there must be a trial." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see also Venturelli*, 350 F.3d at 602.

**I. Analysis under the direct method**

Weber offers several items of evidence in support of her claims under the direct method of proof. First, she points to Van Wychen's notes taken during her phone call with Weber on November 28 when Weber accepted the job. Van Wychen's notes reflect that Weber told her she was pregnant, her baby was due at the end of May and she would want six to eight weeks off. Van Wychen then emailed or called Anklam to inform him of Weber's pregnancy, to which Anklam responded that she would have to work for the company for a year before she would be eligible for any leave. Van Wychen's notes then have an asterisk before the words: "Could cancel offer to hire. No pay unless disabled or disability insurance coverage." (PPFOF ¶¶ 38-41.) Weber argues this notation is evidence of a discriminatory animus against her because she was pregnant.

Weber next points to the deposition testimony of Jim Nerenhausen, Nercon's president. Jim Nerenhausen made the decision to deny Weber leave and short-term disability benefits after consulting with Anklam. (PFOF ¶¶ 159, 163.) At his deposition, Nerenhausen testified that he denied Weber leave and benefits because she wasn't entitled to them under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* It is clear from Nerenhausen's testimony that he believed pregnant female employees were treated differently than injured employees under the law:

> *Q. You said that the short-term disability benefits are tied to the Family Medical Leave Act eligibility.*
>
> A. I said I tied them. You asked me why I made that decision.

8

*Q. Yeah.*

A. And I said I assumed she was not entitled to any benefits because she hadn't been there any longer, but there's a difference between a pregnancy and an injury.

*Q. There is?*

A. It definitely says you have to be there for so many months on a pregnancy to get benefits, family leave benefits.

*Q. Do you think a pregnancy leave or a woman's request for pregnancy leave is different than a male's request for leave on injury?*

A. On the thing we went for on the State, yes, unless she was there for a certain period of time. We've had people that were pregnant before and had babies at our place, no problem at all.

*Q. My question is this. Do you think a woman's request for pregnancy leave is different than a man's request for leave due to injury?*

A. No, but she has to meet certain basic things to get it.

*Q. So she has to meet more requirements than the male?*

A. Under the law, yes.

*Q. That is your understanding?*

A. It is. That is, yeah. It's fairly– I guess it's one paragraph of print. It's pretty clear, I thought.

*Q. So what you're telling me is that a woman who's pregnant and wants to be off work has to meet more requirements than a man who's injured that wants to be off work; that's your understanding?*

A. She has to be there for a certain period of time, yes. He wouldn't have to be, yes.

*Q. So the man doesn't have to be at work for as long as the woman to be able to take off work due to the injury; is that right?*

A. No, if she's been there for so many months before she has the baby, if she's been there so many months, she would get it right away.

9

> *Q. All right. But if a man is injured and needs the time off, he doesn't have to have been there for so many months; is that what you are saying?*
>
> A. I'm saying that – you're trying to put words in my mouth.
>
> *Q. I'm not trying to put words in your mouth.*
>
> A. I'm trying to say that there's a law that says she has to be there so many months. I don't say that.
>
> *Q. Okay. And the man doesn't have to be there so many months?*
>
> A. The law doesn't say he has to be there so many months, yes.

(Nerenhausen Dep. at 37:10-39:16.)

Weber also offers evidence that Nerenhausen was upset upon learning that she was pregnant, that he did not think she would want to return to work after having a third child, and that he had made a statement to Van Wychen in connection with Weber's request for leave to the effect that in his day women would have a baby one day and be out milking the cows the next. In addition, there is evidence that before Weber requested her leave and benefits, Nercon had granted at least eight employees discretionary leaves of absence, even though they were not eligible for FMLA leave, and nine had been granted short-term disability benefits. (PFOF ¶ 170.) In light of this evidence and if in addition Nerenhausen tied leave and short-term disability benefits in pregnancy cases to FMLA eligibility, but did not do so in cases involving injuries or other illnesses, a jury could reasonably conclude that he discriminated against Weber on the basis of her pregnancy in denying her leave and benefits. Accordingly, Nercon's motion for summary judgment must be denied.

It does not follow, however, that Nerenhausen's testimony and the other evidence described above entitles Weber to summary judgment. That Nerenhausen may have been upset that Weber was pregnant does not mean that he discriminated against her because of it. Nerenhausen has

10

submitted an affidavit in which he avers that he "was mistaken and unclear about the application of [Nercon's] short-term disability policy, [its] past practice on leave and how those related to the laws regarding pregnancy leave." (Jim Nerenhausen Aff., ¶ 7.) And, as discussed below, Nercon has an alternative explanation of the real rationale for Nerenhausen's decision. While witnesses generally may not create issues of fact by submitting affidavits that contradict their deposition testimony, a witness is permitted to do so if he "offers a suitable explanation such as confusion, mistake, or lapse in memory for the discrepancy." *Commercial Underwriters Ins. Co. v. Aires Environmental Services, Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001). Nerenhausen's true motivation and whether his deposition testimony merely reflects his subsequent confusion over the law or accurately represents the understanding upon which he acted is for a jury to decide.

**II. Analysis under the indirect method**

Weber also argues that she is entitled to summary judgment under the indirect method of proof. She has shown that she was pregnant and gave birth to a child, that she was performing her job satisfactorily (PFOF ¶¶ 278, 292) and that she was terminated and denied short-term disability benefits. Weber has also produced evidence that three non-pregnant employees who were not FMLA eligible were given benefits for longer periods of time than she requested–as much as 98 days of short-term disability benefits in one case–while she was given none, although it should also be noted that all three were terminated. (Def.'s PFOF ¶ 7.) Weber has thus made out a prima facie case of pregnancy discrimination, and the burden shifts to Nercon to explain the disparate treatment.

Nercon claims that it had a policy of terminating employees who requested leave in excess of "several days," and that Weber's eight weeks of requested leave were denied pursuant to this policy. (Def.'s PFOF ¶ 11.) It claims that it denied her short-term disability benefits because she

11

took leave without permission of the company, and thereby voluntarily terminated her employment and her entitlement to such benefits. (*Id.*) While Nercon had granted short-term disability benefits to women because of pregnancy in the past, all the women who received benefits were also eligible for FMLA leave. (Def.'s PFOF ¶¶ 22-23.) Nercon also admits that it approved leaves for two non-FMLA eligible male employees and approved short-term disability benefits for those two and a third non-FMLA eligible male employee even though the disability ultimately lasted more than eight weeks; however, it claims that with respect to the first two it did not know that these employees' leaves would be so long when it approved them, whereas it knew that Weber wanted a longer leave–which it accordingly denied at the outset. The third employee, who received short-term disability benefits for 98 days, was terminated just as Weber was at the outset of his disability because it was clear it would last for a significant period of time with an uncertain return date. Nercon claims, however, that, unlike Weber, this employee was still employed at the time he became disabled and it is for this reason he was paid short-term disability benefits. (Def.'s PFOF ¶¶ 8-11.)

There are, of course, reasons to doubt Nercon's explanation. In addition to the direct and circumstantial evidence of discrimination discussed above, it also appears that Weber offered to shorten her leave and that Nercon flatly refused to offer her any leave whatsoever. (Weber Dep. at 34:17-35:2.) These disputes, however, are for a jury to resolve. Because Nercon has offered some evidence of a nondiscriminatory reason for terminating Weber and denying her short-term disability benefits, her motion for summary judgment must be denied. *Stone*, 281 F.3d at 644.

As a final matter, Nercon has moved for summary judgment on Weber's claim for punitive damages. Weber may recover punitive damages only if she proves that Nercon acted with malice

12

or with reckless indifference to her federally protected rights. 42 U.S.C. § 1981a(b)(1); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 661 (7th Cir. 2001). Whether Nercon acted with malice or deliberate indifference to Weber's federally protected rights cannot be determined from the record as it stands. Accordingly, Nercon's motion will be denied.[3]

## CONCLUSION

For the foregoing reasons, both parties' motions for summary judgment are hereby **DENIED.**

**SO ORDERED.**

Dated this   29th   day of December, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[3] In light of its determination that Weber has presented sufficient evidence to survive summary judgment on her claims arising out of Nercon's denial of leave and short-term disability benefits, the court need not address Weber's contention that Nercon discriminated against her on the basis of pregnancy in refusing to re-hire her.

13